Kelly J. BRYANT, Appellant–Petitioner,

v.

Mason L. BRYANT, Appellee–
Respondent.

No. 65A01–9710–CV–334.

Court of Appeals of Indiana.

April 22, 1998.

Rehearing Denied June 24, 1998.

Catherine A. Nestrick, Bamberger, Foreman, Oswald and Hahn, Evansville, for Appellant–Petitioner.

Darrel K. Kiamond, Delphi, for Appellee–Respondent.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kelly J. Bryant ("Mother") appeals from a trial court order which granted a petition to modify child custody and gave primary physical custody to Mother's former husband, Mason L. Bryant ("Father"). The sole issue presented for our review is whether the trial court abused its discretion when it modified the original custody order.

We reverse.

### FACTS

Mother and Father were married October 3, 1990, and one child, M.B., was born of the marriage. In 1992, the Bryants moved from the United States to Vincenza, Italy, where Father was stationed with the U.S. military. M.B. was then one and one-half years old. In May of 1994, Mother traveled to Indiana to obtain a divorce. On October 27, 1994, the trial court issued a decree dissolving the marriage. As part of the decree, the trial court gave Mother and Father joint legal custody of M.B., with primary physical custody awarded to Mother. The order also provided that M.B. would live in Italy with Mother.

After the divorce, Mother and M.B. returned to Vincenza. For the next nine months, Father also lived in Vincenza until he was transferred to Fort Polk, Louisiana. Father married a woman from Vincenza at that time. In September of 1996, Mother agreed to let M.B. live with Father and his step-mother in the United States for the duration of the school year. The parties had agreed that M.B. would return to Italy when school ended. However, prior to the end of the school year, Father filed his petition for modification of custody. The court granted the petition and ordered that Father have primary physical custody of M.B. during the nine-month school year. The trial court gave Mother physical custody of M.B. during his summer vacations. Both parties received visitation rights. Mother now appeals.

### DISCUSSION AND DECISION

■ Mother contends that the trial court abused its discretion in modifying its original custody order. A determination of custody modification is committed to the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. *Van Schoyck v. Van Schoyck*, 661 N.E.2d 1, 4–5 (Ind.Ct.App.1996), *trans. denied.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

■ Additionally, Mother is appealing a decision in which the trial court entered findings and conclusions *sua sponte.* When reviewing specific findings of fact and conclusions thereon under Indiana Trial Rule 52(A), this court may not affirm the judgment on any legal basis. Rather, we must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App. 1991), *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous or contrary to law. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. We will not reweigh the evidence or assess witness credibility. *Id.*

■ However, when the trial court enters findings and conclusions *sua sponte*, the specific findings only control as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis*, 575 N.E.2d 650, 652 (Ind.Ct.App. 1991). We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

Modification of child custody is governed by Indiana Code § 31–17–2–21, which provides in relevant part:

(a) The court may not modify a child custody order unless:

(1) the modification is in the best interest of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 of this chapter.

(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

The factors enumerated under Indiana Code § 31–17–2–8 are:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent.

■ Here, the trial court found that several substantial changes had occurred since the original custody order and concluded that it was in M.B.'s best interest for Father to have primary physical custody. Specifically, the court found that M.B.'s increasing age, his adjustment to his home in the United States and his relationship with his stepmother were substantial changes that justified modification. With respect to the second finding, the court stated:

I think it is in the child's best interest that the United States be seen as his home country. Now his step-mother is Italian, his mother lives in Italy, he has spent a significant portion of his life in Italy. It is, apparently a wonderful country, I haven't been there, but I have certainly done a lot of reading about it. We depend a lot on our legal system and our culture on the Roman society, the Italian history, so I think it is wonderful that he has that connection. And I think we should do everything to encourage that, as much as possible. But I see that as a second culture, not a first culture. And I think that is what the parents thought, too. The evidence in this case seems to be very clear, that the parents see the United States as their son's first culture and Italy as a second culture, and that is why he went to school here last year.... So, I think there have been some very substantial changes since our last Order.

We disagree that any of the factors relied on by the trial court support modification of the original custody order. First, the fact that M.B. has grown older does not in itself constitute a substantial change in circumstances. If it did, every custody order would be subject to automatic modification as a child grows older.

Also, we cannot agree with the conclusion that is in M.B.'s "best interest that the United States be seen as his home country." That conclusion is not supported by the evidence. At the time of the original decree, the parties knew that Father would be transferred to the United States as soon as he completed his overseas assignment. Still, the trial court awarded primary physical custody to Mother, who had clearly expressed her intention to remain in Italy. Thus, we disagree that the evidence clearly shows the parties' intention to treat the United States as M.B.'s "first culture."

The record indicates that M.B. had many friends in Italy, that he has learned to speak Italian and that he has adjusted well to his life there. In addition, the evidence shows that M.B. will attend a United States military school no matter which parent has custody and, thus, being raised in Italy does not put him at an educational disadvantage, as Father argues on appeal. Finally, under the original custody order, Father has physical custody of M.B. during the summer months. Those periods will provide ample opportunity for him to experience U.S. culture.

■ Finally, we disagree that Father's remarriage supports the change in custody. Under the former custody modification statute, a trial court could not grant a modification petition based solely on an improvement in the non-custodial parent's lifestyle, including the parent's remarriage. *See Joe v. Lebow*, 670 N.E.2d 9, 19 (Ind.Ct.App.1996) (citations omitted).[1] That rule was premised on the assumption that because stability of custody is in the child's best interest, changes in custody are to be granted only upon a strict showing that the change is necessary for the child's welfare. *Id.* However, improvements in the non-custodial home are now proper considerations under the revised modification standard. *Id.*

■ Nevertheless, *Joe* emphasizes that the policy of stability remains a guiding factor in determining whether a custody order should be modified. *Id.* at 20–21. As such, trial courts should still consider the reasonableness of the original decree in determining the child's best interests and in weighing the child's need for stability against any benefit to be derived from modified custody.[2] Thus, even under the revised standard, we conclude that the non-custodial parent's remarriage does not in itself constitute a change in circumstances sufficient to support a change in custody. To hold otherwise would subject the custody order to one or more modifications as each parent remarries. While changes in the non-custodial household, including remarriage, may now be considered, substantial factors other than remarriage must also be present.

Finally, we disapprove of the evidence relied upon by the trial court in reaching its decision to modify custody. In *Joe*, 670 N.E.2d at 22, we stated that the necessary "substantial change in circumstances" cannot be premised on evidence of changes in the child's condition occurring during the period in which the custody of the child has been transferred to the non-custodial parent pursuant to an emergency petition. However, such evidence may be used to determine the child's best interest. *Id.* at 23. Although Father had not gained temporary physical custody of M.B. under an emergency petition, we question the court's reliance on evidence regarding M.B.'s adjustment to life in the United States as proof of a substantial change. The court's conclusion effectively penalizes Mother for having allowed M.B. to live with Father for the school year.

We likewise disapprove of the court's reliance on evidence regarding the relationship M.B. formed with his step-mother and the care rendered by her during Father's custodial period. The trial court notes that M.B. has developed a "loving relationship" with his step-mother while in the United States and that she "has been a good mother" to him. However, there is no evidence that the step-mother would make a demonstrably better "parent" than Mother or that M.B. does not have a loving relationship with Mother. The court's explanation for its order improperly elevates a step-parent's importance over that of the natural parent. Our courts should not discourage a custodial parent from allowing a child to spend extra time with the non-custodial parent for fear that any "adjustment" made or "relationship" formed by the child with a third-party during that time might

---

1. Under the former modification statute, the petitioning party was required to prove that the existing custody order had become unreasonable. For a discussion of the common law rules regarding the factors that trial courts could and could not consider in modification cases, · see generally *Winderlich v. Mace*, 616 N.E.2d 1057 (Ind.Ct.App.1993).

2. Our opinion in *Joe* acknowledges the conflict between the common law "bright-line" rules and the revised modification standard. The court explained:

> [U]nder the revised modification provision, a trial court need no longer find that an existing custody order is unreasonable in order to mod-

ify custody, so long as a "substantial change" in one or more of the enumerated factors has occurred, and the trial court finds as well that modification would be in the child's best interests. *However, when considering modification provisions under the revised standard, trial courts should not disregard principles developed under prior caselaw which have not been clearly rejected in the recent amendments.* As cases are presented in which the particular rules and principles come squarely into question, the interrelationship between prior caselaw and the revised statutory provisions will be more clearly defined.

*Id.* at 21 (citations and footnotes omitted).

later be deemed a substantial change in circumstances.

Based on the foregoing, we hold that the trial court abused its discretion when it modified the original custody order. The evidence shows that because of his military service, Father is frequently away from home, thereby defeating the perceived benefit of a two-parent household. Father, although not strictly required to do so, has not shown that M.B.'s welfare was at risk or that his interests were ill-served under the original custody order. Although M.B.'s relationship with his step-mother is a relevant factor under the revised statute, in this case that relationship is not entitled to greater weight than M.B.'s relationship with Mother. We conclude that Father has not shown that a change in custody is in M.B.'s best interest.

Reversed.

BAKER and RILEY, JJ., concur.